[No. 31391.  July 10, 1950.]

PAUL ELLIOTT, *Respondent,* v. KARL L. FISCHER, *Appellant.*[1]

*Abrams, McCush & Rinker,* for appellant.

*J. W. Kindall* and *Lester C. Voris,* for respondent.

PER CURIAM.—Plaintiff instituted this action for the purpose of rescinding and setting aside the sale to himself by defendant of real property, 14 Holstein cows, 9 Holstein heifers, and certain farming equipment. The cause tried to the court resulted in the entry of a judgment in favor of plaintiff. The defendant then appealed to this court and in so doing assigned as error:

(1) The court's finding that the evidence was sufficient to justify judgment in favor of respondent;

(2) The entering of a judgment in favor of the respondent and against appellant;

(3) The court's finding that the evidence was sufficient to justify the entering of a judgment for total rescission of the contract of sale in favor of respondent instead of providing for the allowance to him of compensation by way of damages or a proportionate abatement of the purchase price;

(4) The making and entering of the order denying appellant's motion for a new trial.

[1]Reported in 220 P. (2d) 338.

The evidence produced by respondent showed: Respondent had spent a large portion of his life as an employee of the United States merchant marine and was entirely unacquainted with farming or stock; January 11, 1949, he and his wife were shown the farm by appellant who made representations as follows: That the milk produced averaged an income of three hundred fifty dollars per month, and that it would have been more if it had not been for the fact that appellant was in poor health and could not take care of the farm and the stock; that the cows on the farm were free from disease and were as good as any dairy herd to be found in Whatcom county. Respondent's evidence also showed that at the first milking on the evening of March 25th, the cows produced but fourteen gallons of milk, and but ten gallons on the following morning; that respondent found that the milk was difficult to strain because it was cheesy and stringy. He further ascertained that four of the milch cows had three-quarter udders, and a fifth cow had a teat severed about three-quarters of an inch from the udder from which milk flowed freely at all times.

There was considerable testimony to the effect that the cows were infected with two contagious and infectious types of mastitis, known as "streptoccocus agalactiae," which is commonly called "long chain strep," and "staphylococcus" which is commonly called "staph."

The evidence elicited from veterinarians showed that there are two kinds of mastitis. One type, known as "catarrhal" or "garget," is caused by overfeeding, by a bruise on the cow's udder, or by improper milking. This disease will right itself when the conditions that cause it change. It is a local infection. There is another type of mastitis that is infectious, and if the cattle have this type, it will be carried from one cow to another, with the result that the entire herd becomes diseased. The only way of avoiding the spread of this disease in a herd is to isolate the infected cow or dispose of her and thoroughly sterilize the premises. That the cows purchased by respondent had an infectious type of mastitis was testified to by four veterinarians.

Appellant's testimony, on the other hand, shows that he stated the cattle were free from disease, but that the only discussion concerned Bang's disease and tuberculosis and the question of whether or not they were infected with mastitis was not mentioned. Appellant also contended that the producing capacity of the herd was discussed, but there was nothing definite said about it. In effect, the evidence produced by appellant contradicted that produced by respondent.

At the conclusion of the trial, counsel furnished briefs and argued the case to the court. At that time, the court made the following statement:

"The issue is simplified considerably by the admission in the defendant's Answer that he did advise the plaintiff that there were fourteen milk cows upon the farm and nine head of young stock, and said the cows were good grade stock and were free from disease. Admitting that he told the plaintiff those facts, we must apply to that statement the rule that, it being a representation of a fact, it must be true, must be correct, and it makes no difference for the purpose of this case whether Mr. Fischer knew it was false or not. He made it as a statement of fact. I think it was a statement upon which Mr. Elliott had a right to rely. The evidence shows by more than a preponderance, that is, by what to the Court seems to be a clear and convincing degree of proof, that both types of mastitis existed in this herd at the time of this sale, both streptococcus and staphylococcus, both of which types are, according to the evidence of the veterinarians, infectious, and are caused by bacteria. I reach that conclusion because it seems to be the consensus of expert opinion given by the veterinarians. The quarters of the cows affected were the quarters which, later examined, showed to be the same ones that the plaintiff claims were affected at the time of the sale. There is no evidence that the disability came so suddenly as to have been caused by the temporary change of feeding when there was not hay to supplement the protein diet. So, with the further evidence that the milk seemed to be stringy, and strained with difficulty the first night the plaintiffs put it through the strainers, it would indicate the presence of the infection at the time of plaintiff's taking possession of the property."

At a subsequent hearing, when the case was again argued, the court reiterated its conclusion to which we have just referred.

Appellant calls our attention to the rule that fraud is never presumed but must be proved by evidence that is clear, cogent and convincing and cites several of our cases to that effect. He further cites *Dixon v. MacGillivray,* 29 Wn. (2d) 30, 185 P. (2d) 109, which sets out the necessary elements of fraud which must be proved in order to have a contract of sale rescinded on the ground of fraud. There are nine of these requirements, all of which we have considered.

After a reading of the statement of facts and the briefs, and after having heard the arguments of counsel, we cannot say we are in a position to overrule the conclusion reached by the trial court. The trial court saw the witnesses, heard them testify, and made a very definite statement as to the conclusions he drew from their testimony. The evidence, as believed by the trial court, was sufficient to prove appellant guilty of fraud by clear, cogent and convincing evidence. The representations made by appellant were material and he knew, or should have known, that the representations were faulty and that the respondent would rely upon those representations.

Based upon these reasons, we affirm the judgment.